1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

9

FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11

| | |
|---|---|
| GUIDRY LIASON GROUP, INC. DBA LIASON INTERNATIONAL, | Case No. 2:25-cv-01199-CSK |
| Plaintiff, | |
| v. | ORDER DENYING DEFENDANT'S MOTION TO DISMISS |
| FULL SAIL LOGISTICS, LLC, et al., | (ECF Nos. 7, 8) |
| Defendants. | |

12

13

14

15

16

17        Pending before the Court is Defendant Full Sail Logistics, LLC's motion to dismiss

18   the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2), or in the alternative,

19   motion to stay or dismiss the action. Def. Mot. (ECF No. 7).[1] A hearing was held on

20   September 2, 2025.[2] (ECF No. 27.) Attorney Willie Williams appeared on behalf of

21   Plaintiff Guidry Liason Group, Inc. and attorney George Musekamp appeared on behalf

22   of Full Sail. *Id.* For the reasons that follow, the Court DENIES Full Sail's motion to

23   dismiss, and DENIES Full Sail's alternative motion to stay or dismiss the action.

24   / / /

25   / / /

26   ───────────────

27   [1]   This matter proceeds before the undersigned pursuant to 28 U.S.C. § 636(c) on the consent of all parties. (ECF Nos. 9, 16, 17.)

28   [2]   The Court approved Defendant's unopposed request to appear by video and the hearing on Defendant's motion to dismiss was held by Zoom. (ECF Nos. 25, 26.)

1    **I.    BACKGROUND**

2        **A.    Factual Allegations[3]**

3        Plaintiff Guidry Liason Group, Inc. is a well-established government contractor

4    that executes food delivery contracts for the United States Government, primarily for the

5    U.S. Department of Agriculture ("USDA"). Compl. ¶ 5 (ECF No. 1, Exh. A). The USDA

6    issues a bid solicitation and contracts are awarded through a bidding process. *Id.* Guidry

7    Liason does not directly provide transportation services and instead subcontracts with

8    trucking and logistic companies to deliver the goods. *Id.*

9        Prior to responding to a bid solicitation, Guidry Liason sends out detailed requests

10   for pricing ("trucking price quotes") from multiple trucking companies for each item of the

11   bid. Compl. ¶ 6. The bid solicitations typically contain multiple line items, including the

12   origin, destination, type of item, and delivery window. *Id.* The trucking and logistic

13   companies can choose to provide trucking price quotes on any specific line item without

14   limitation. *Id.* Guidry Liason analyzes the bids by line item to determine the best trucking

15   price quote for each. *Id.* Guidry Liason relies on the trucking price quotes to formulate its

16   bid on the government contracts. *Id.*

17       When Guidry Liason is awarded a government contract, it issues purchase orders

18   to the trucking companies whose trucking price quote was chosen by Guidry Liason.

19   Compl. ¶ 7. For each line item, the subcontracting trucking company has agreed to

20   deliver certain goods, for a definitive price, within a specific delivery window. *Id.* Once

21   the goods are ready for pickup, the supplier notifies the subcontracting trucking company

22   who is then responsible for making a pickup appointment with the supplier. *Id.* ¶ 18.

23   Guidry Liason is not involved in the coordination and dispatch of the individual drivers

24   and only confers with the subcontracting trucking company if there is a problem with the

25   _____

26   [3]  These facts primarily derive from the Complaint (ECF No. 1, Exh. A), which are
     construed in the light most favorable to Plaintiff as the non-moving party. *Faulkner v.*
27   *ADT Sec. Servs.*, 706 F.3d 1017, 1019 (9th Cir. 2013). However, the Court does not
     assume the truth of any conclusory factual allegations or legal conclusions. *Paulsen v.*
28   *CNF Inc.*, 559 F.3d 1061, 1071 (9th Cir. 2009).

1  execution of the pickup or delivery of the goods. *Id.*

2         The Complaint alleges in early 2024, Guidry Liason received a bid solicitation for

3  a USDA contract for the delivery of almonds to various locations through the United

4  States ("2024 Bid Solicitation"). Compl. ¶ 8, Exh. 1. After receiving the 2024 Bid

5  Solicitation, Guidry Liason sent requests for trucking price quotes from trucking

6  companies to submit bids on individual line items. *Id.* ¶ 9. The trucking price quotes

7  included detailed information regarding destination, type of item, delivery window, and

8  origin. *Id.* Specifically, Guidry Liason provided the request for trucking price quotes to

9  Full Sail, which contained the following language in the header:

10         All offers by any trucking firm constitute an offer to contract
           because Guidry Liaison Group relies on your request in its
11         submittal to the USDA. Each offer pertains to a specific line
           item in a particular delivery window for a fixed price. All prices
12         submitted cannot be changed unless the USDA changes the
           delivery address or delivery timeframe. Therefore, providing
13         rates is a binding contact if you are issued Purchase Order
           based on your price offer.
14

15  *Id.* ¶ 10. Full Sail is a third-party logistics provider that arranges the transportation of

16  freight by independent third-party motor carriers. Full Sail provided trucking price quotes

17  on numerous line items for the 2024 Bid Solicitation, including line items with a

18  destination to California. *Id.* ¶ 12, Exh 2. Full Sail's trucking price quotes also included

19  the origin as Fresno, CA, Hughson, CA, Vina, CA for every line item. *Id.* Exh. 2. Guidry

20  Liason relied upon the trucking price quotes provided by Full Sail in formulating its bid for

21  the USDA Contract, Invitation Number 2000009836 ("USDA Bid"). *Id.*

22         Following submission of the USDA Bid, Guidry Liason was awarded the USDA

23  Contract Purchase Order No. 4100029440 ("USDA Contract"). Compl. ¶ 14. After being

24  notified of the award, Guidry Liason issued purchase orders to Full Sail for each line item

25  where Guidry Liason had selected Full Sail. *Id.* Full Sail acknowledged receipt of the

26  numerous purchase orders with the understanding that a subcontract had been formed

27  with specific price terms and delivery instructions (collectively "2024 Purchase Orders").

28  *Id.* The 2024 Purchase Orders issued contained the following language:

3

1

2

3

4

5

6

7

8

> Acceptance of this Purchase Order confirms that if any legal disputes arise, jurisdiction is the State of California. An acceptance confirms your firm confirms the contract price listed in the Purchase Order.
>
> […]
>
> If a dispute arises out of or relates to this contract or the breach thereof, and if the dispute cannot be settled through negotiation, the parties agree first to, in good faith, settle the dispute by mediation administered by the American Arbitration Association under its Commercial Mediation Procedures before resorting to arbitration, litigation, or some other dispute resolution procedure.

9    Compl. ¶¶ 15-16; Exh. 3.

10       Under the 2024 Purchase Orders, Full Sail was responsible for picking up

11   almonds from the supplier, Grower Direct Nut Co., in Stanislaus County, California, and

12   delivering the almonds to various destinations in Oklahoma and Texas. *Id*. ¶ 18, Exh. 2

13   (origin as California), Exh. 3 (2/27/2024 Purchase Order Nos. 125083 and 125093 with

14   Oklahoma and Texas destinations). Full Sail delivered some of the loads, but two loads

15   that were scheduled to be delivered to destinations in Oklahoma and Texas were not

16   delivered because they were allegedly stolen. *Id*. Full Sail alleges that it contracted the

17   loads to Joshua Price LLC, which Joshua Price LLC denies. *Id*. ¶ 19. Full Sail has

18   refused to take responsibility for the loss of the stolen loads and has failed to tender the

19   stolen loads to its insurance carrier. *Id*. ¶ 20. As a result, Guidry Liason had to pay its

20   almond supplier $214,577.20 in replacement costs for the stolen loads. *Id*. ¶ 22.

21       **B.    Procedural Posture**

22       On February 21, 2025, Guidry Liason initiated this action in Stanislaus County

23   Superior Court against Full Sail alleging three causes of action: (1) breach of contract;

24   (2) breach of implied contract; and (3) negligence. *See* Compl. Guidry Liason alleges

25   Full Sail breached the 2024 Purchase Orders "by not safely transporting the almonds for

26   the agreed upon price," thereby harming Guidry Liason. *Id*. ¶¶ 24-25, 27, 29, 31, 33.

27   Guidry Liason further alleges Full Sail breached its duty owed to Guidry Liason by

28   negligently entrusting the delivery of almonds to a third party; not providing safeguards

4

to ensure a safe delivery; failing to conduct due diligence on the third-party transporter; failing to verify the identity of the third-party transporter; and allowing the almonds under the 2024 Purchase Orders to be stolen, which resulted in damage to Guidry Liason. *Id*. ¶¶ 35-36, 37. On April 25, 2025, Full Sail removed this action based on diversity jurisdiction. Removal (ECF No. 1). On May 30, 2025, Full Sail filed the pending motion to dismiss and filed a request for judicial notice. Def. Mot.; Def. RJN (ECF No. 8.) Guidry Liason filed its opposition, and Full Sail filed its reply. (ECF Nos. 18, 21.) A hearing was held on September 2, 2025 and the motion was taken under submission.

## II.     LEGAL STANDARDS

### A.     Personal Jurisdiction under Rule 12(b)(2)

Rule 12(b)(2) allows a party to assert lack of personal jurisdiction as a defense and request dismissal of the suit. Fed. R. Civ. P. (12)(b)(2). The plaintiff bears the burden to establish the court has personal jurisdiction over this defendant. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002). To determine whether a court has personal jurisdiction over a nonresident defendant, it examines the forum state's long-arm statute and federal due process. *Axiom Foods, Inc. v. Acerchem International, Inc.*, 874 F.3d 1064, 1067 (9th Cir. 2017).

In resolving jurisdictional issues, the court may consider evidence presented in affidavits and may order discovery. *Fred Martin Motor*, 374 F.3d at 800. When no evidentiary hearing is held, a plaintiff is only required to make a prima facie showing of jurisdictional facts to withstand the motion. *Id.* The Court takes the plaintiff's facts as true resolves conflicts in the record in plaintiff's favor for the purposes of deciding whether a prima facie case for personal jurisdiction exists under a Rule 12(b)(2) motion. *Id.*

### B.     Forum Non Conveniens

"[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of forum non conveniens." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 60 (2013). District courts have discretion to dismiss an action under the doctrine of forum non conveniens. *Ayco Farms,*

1  *Inc. v. Ochoa*, 862 F.3d 945, 948 (9th Cir. 2017). In a motion for forum non conveniens

2  involving a forum selection clause, a district court must first determine whether the

3  relevant forum selection clause is valid under federal law. *Doe 1 v. AOL LLC*, 552 F.3d

4  1077, 1083 (9th Cir. 2009). "Once a court finds that a forum selection clause is valid, it

5  must balance public interest factors to determine whether dismissal of the action in favor

6  of the other forum would promote justice." *Color Switch LLC v. Fortafy Games DMCC*,

7  377 F. Supp. 3d 1075, 1083 (E.D. Cal. 2019), *aff'd*, 818 F. App'x 694 (9th Cir. 2020).

8  Dismissal for forum non conveniens is an "exceptional tool to be employed sparingly[.]"

9  *Dole Food Co. v. Watts*, 303 F.3d 1104, 1118 (9th Cir. 2002) (quoting *Ravelo Monegro*

10  *v. Rosa*, 211 F.3d 509, 512 (9th Cir. 2000)).

11      **C.    First-to-File Rule**

12      The first-to-file rule is a "doctrine of federal comity which permits a district court to

13  decline jurisdiction over an action when a complaint involving the same parties and

14  issues has already been filed in another district." *Kohn L. Grp., Inc. v. Auto Parts Mfg.*

15  *Miss., Inc.*, 787 F.3d 1237, 1239 (9th Cir. 2015); *Pacesetter Sys., Inc. v. Medtronic, Inc.*,

16  678 F.2d 93, 94-95 (9th Cir. 1982). It permits "a court to transfer, stay, or dismiss a later-

17  filed suit in deference to an earlier-filed suit." *In re Bozic*, 888 F.3d 1048, 1055 (9th Cir.

18  2018). The first-to-file rule "serve[s] the purpose of promoting efficiency well and should

19  not be disregarded lightly." *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625 (9th

20  Cir. 1991).

21      **D.    *Colorado River* Doctrine**

22      In *Colorado River*, the Supreme Court recognized that a stay or dismissal of

23  federal proceedings in favor of parallel state proceedings may be warranted based on

24  "wise judicial administration, giving regard to conservation of judicial resources and

25  comprehensive disposition of litigation." *Colo. River Water Conservation Dist. v. United*

26  *States*, 424 U.S. 800, 817 (1976). The *Colorado River* doctrine applies only in "rare

27  cases" and "only the clearest of justifications will warrant dismissal or stay." *United*

28  *States v. State Water Res. Control Bd.*, 988 F.3d 1194, 1202 (9th Cir. 2021) (citing *Colo.*

1 | *River Water Conservation Dist.,* 424 U.S. at 819).

2 | **III.    DISCUSSION**

3 | Full Sail moves to dismiss the entire action pursuant to Federal Rule of Civil

4 | Procedure 12(b)(2) for lack of personal jurisdiction and forum non-conveniens. Def. Mot.

5 | at 9. In the alternative, Full Sail requests this action be stayed or dismissed under the

6 | first-to-file rule and the *Colorado River* doctrine. *Id.* The Court first addresses Full Sail's

7 | request for judicial notice.

8 | **A.    Request for Judicial Notice**

9 | In conjunction with the pending motion, Full Sail requests the Court take judicial

10 | notice of four exhibits from the Ohio state court proceedings in *Full Sail Logistics, LLC v.*

11 | *Guidry Liason Group, Inc.*, Case No. 2024-cv-06196 (Ohio Com. Pl. 2024) ("Ohio State

12 | Action"). Def. RJN (ECF No. 8). Guidry Liason did not oppose the request. *See* Docket.

13 | A federal court may take judicial notice of documents filed in related state court actions.

14 | *See Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*, 136 F.3d 1360, 1364

15 | (9th Cir. 1998) (taking judicial notice of court filings in a related state court action where

16 | the same plaintiff asserted similar and related claims); *U.S. ex rel. Robinson Rancheria*

17 | *Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (taking judicial notice

18 | of proceedings in other courts where those proceedings have a "direct relation to matters

19 | at issue"). Although the Court does not accept the representations stated within the state

20 | court filings as true, it may take notice of the fact those representations were made.

21 | Accordingly, the Court will grant Full Sail's request for judicial notice of these related

22 | state court records.

23 | **B.    Personal Jurisdiction**

24 | Federal due process permits a court to exercise personal jurisdiction over a

25 | nonresident defendant if that defendant has minimum contacts with the relevant forum

26 | such that the exercise of jurisdiction "does not offend traditional notions of fair play and

27 | substantial justice.'" *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 351

28 | (2021) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316-17 (1945)). Those

contacts may be so continuous and systematic as to render a defendant essentially at home in the forum state and amenable to any suit there. *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1106 (9th Cir. 2020). "Alternatively, a court may exercise jurisdiction over issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id*. (internal quotation marks and citation omitted). These different bases for personal jurisdiction are often referred to as "general" and "specific" jurisdiction. *Id*. (quoting *Bristol-Myers Squibb Co. v. Superior Court of Cal*., 582 U.S. 255, 262 (2017)). In addition, the United States Supreme Court has acknowledged that because "the personal jurisdiction requirement is a waivable right, there are a 'variety of legal arrangements' by which a litigant may give 'express or implied consent to the personal jurisdiction of the court.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 fn. 14 (1985).

This includes consenting to a court's jurisdiction by contract. *Id*. Such consent can be established by a forum selection clause. "Under general contract principles, a forum selection clause may give rise to waiver of objections to personal jurisdiction, provided that the defendant agrees to be so bound." *Holland Am. Line, Inc. v. Wartsila N. Am., Inc*., 485 F.3d 450, 457 (9th Cir. 2007) (internal citations omitted). When a forum selection clause has been obtained by "freely negotiated agreements" and is not "unreasonable and unjust," its "enforcement does not offend due process." *Chan v. Soc'y Expeditions, Inc*., 39 F.3d 1398, 1406 (9th Cir. 1994); *see also Burger King Corp*., 471 U.S. at 472 n.14. Here, Guidry Liason argues two theories to support personal jurisdiction over Full Sail: (1) an enforceable California forum selection clause in the 2024 Purchase Orders; and (2) specific jurisdiction. Pl. Oppn. at 9-12 (ECF No. 18).

### 1.    Forum Selection Clause

Guidry Liason argues the parties' agreement contained a forum selection clause, which requires any disputes relating to the 2024 Purchase Orders to be litigated in California. Pl. Oppn. at 9 (citing Compl. ¶ 15, Exh. 3). Full Sail argues it did not consent to the California forum selection clause in the 2024 Purchase Orders and provides

several reasons why the California forum selection clause is vague, ambiguous and permissive. Def. Reply at 4-11 (ECF No. 21). Because the Court finds specific jurisdiction, the Court declines to reach the parties' forum selection clause arguments.

2.    Specific Jurisdiction

Guidry Liason also argues Full Sail is subject to the Court's specific jurisdiction because Full Sail has sufficient minimum contacts with California and there is no dispute the claims in this action arise out of Full Sail's forum-related activities. Pl. Oppn. at 11. Full Sail argues it lacks sufficient minimum contacts with California and that maintaining suit in California would offend traditional notions of fair play and substantial justice. Def. Mot. at 15-14; Def. Reply at 11.

Courts have specific jurisdiction over a nonresident defendant where there is sufficient contact with the forum state, and the claims arise out of that contact. *Bristol-Myers Squibb Co.*, 582 U.S. at 262. In the Ninth Circuit, courts use a three-prong test to determine whether it is appropriate to exercise specific jurisdiction over a nonresident defendant: "(1) the defendant must either purposefully direct his activities toward the forum or purposefully avail himself of the privileges of conducting activities in the forum; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Axiom Foods, Inc*, 874 F.3d at 1068 (quoting *Dole Food Co., Inc*, 303 F.3d at 1111). The plaintiff bears the burden of satisfying the first two prongs. *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011). If the plaintiff meets its burden, the burden then shifts to the defendant to set forth a "compelling case" that the exercise of jurisdiction would not be reasonable. *Id.*

a.    *Purposeful Availment*

The first prong for specific jurisdiction may be satisfied by either purposeful availment or purposeful direction. Although often clustered together, purposeful availment and purposeful direction are two distinct concepts. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). A purposeful availment analysis is

9

often used in suits sounding in contract, while a purposeful direction analysis is often used in suits sounding in tort. *Id*; *see also Holland Am. Line Inc*., 485 F.3d at 460 ("it is well-established that the [purposeful direction] test applies only to intentional torts, not to the breach of contract and negligence claims"). Because all of Guidry Liason's claims sound in contract, the Court applies the purposeful availment test here.

Evidence of purposeful availment is "typically action taking place in the forum that invokes the benefits and protections of the law in the forum." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006). Where a defendant "deliberately has engaged in significant activities" in a state or has created "continuing obligations" between himself and the residents of the forum, "it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Burger King Corp*., 471 U.S. at 475-76. A contract alone does not automatically establish minimum contacts in the forum. *Boschetto v. Hansing*, 539 F.3d 1011, 1017 (9th Cir. 2008). In determining whether minimum contacts exist, courts consider "prior negotiations, and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Burger King Corp*., 471 U.S. at 479.

Guidry Liason has established Full Sail purposefully availed itself of California as a forum. The parties do not dispute that Guidry Liason, a California corporation, and Full Sail, an Ohio corporation, have had an ongoing business relationship since 2022 whereby Full Sail has provided transportation brokerage services to Guidry Liason for delivery of goods. Compl. ¶¶ 5, 13; 5/30/2025 Declaration of Christopher Reed ¶ 4 (ECF No. 7-1). The Complaint also alleges Full Sail has done business "across the nation, including in Riverside County", which Full Sail does not dispute. *See* Compl. ¶ 2.; *see also* Def. Mot. at 15-16; Def. Reply at 11.

Further, the Complaint alleges Guidry Liason sent requests for trucking price quotes to trucking companies to submit bids on individual line items as to the 2024 Bid Solicitation. Compl. ¶ 9. Bid solicitations generally include the origin, destination, type of item and delivery window. *Id*. ¶¶ 6-7. Full Sail provided trucking price quotes to Guidry

Liason on numerous line items for the 2024 Bid Solicitation, which included picking up the almonds in California, transporting them from California, and delivering them to other locations. Compl. ¶¶ 8-12 & Exh. 2. Full Sail's submission of trucking price quotes to Guidry Liason included delivery to multiple locations in California, including Bakersfield, Fairfield, Fresno, Garden Grove, Indio, Industry, Long Beach, Merced, Oakland, Oxnard, Riverside, Sacramento, San Bernardino, San Diego, San Francisco, San Jose, Santa Rosa, Stockton and Woodland. Compl., Exh. 2. The 2024 Purchase Orders specifically required the almonds to be picked up from the supplier, Grower Direct Nut Co., in Stanislaus County, California, and for the almonds to be delivered to various destinations in Oklahoma and Texas. *Id*. ¶ 18, Exhs. 2, 3.

The Complaint also alleges Full Sail was familiar with the process and execution of subcontracts based on bid solicitations because Full Sail has done business with Guidry Liason under the same terms since 2022. *Id*. ¶ 13. Finally, the Complaint alleges Full Sail took steps to perform under the 2024 Purchase Orders by contracting with a third-party transporter to pick up the almonds in California and have them delivered to the various destinations in Oklahoma and Texas. Compl. ¶¶ 14-16, 18-19. Full Sail does not appear to dispute this. *See* Def. Mot.; Def. Reply.

Taken together, Guidry Liason has shown that Full Sail purposefully availed itself of the privilege of doing business in California. *See also Schwarzenegger*, 374 F.3d at 802 (finding evidence of the defendant's actions in the forum, such as executing or performing a contract, are sufficient to establish that he has purposefully availed himself of the privilege of doing business in a forum state).

          b.     *Claims Arising Out of, or Related to, Forum Activities*

Next, the claims brought by the plaintiff must arise out of or relate to the defendant's contacts with the forum in order for the court to exercise specific jurisdiction. *Axiom Foods, Inc*., 874 F.3d at 1068 (citing *Dole Food Co., Inc*., 303 F.3d at 1111). To determine whether a particular claim arises out of forum-related activities, the Ninth Circuit relies on a "but for" test. *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995).

1    "The question, therefore, is this: but for [defendant's] contacts with [the forum], would

2    [plaintiff's] claims against the [defendant] have arisen?" *Id*. Guidry Liason's claims would

3    not have arisen but for Full Sail's submission of trucking price quotes on line items for

4    the 2024 Bid Solicitation for the pick-up and delivery of goods involving the state of

5    California. Therefore, the Court finds this prong is satisfied.

6                                    c.    *Reasonableness*

7            To determine whether personal jurisdiction is reasonable under the third prong,

8    the following seven factors are considered: "(1) the extent of the defendants' purposeful

9    interjection into the forum state's affairs; (2) the burden on the defendant of defending in

10   the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the

11   forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution

12   of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient

13   and effective relief; and (7) the existence of an alternative forum." *CE Distrib., LLC v.*

14   *New Sensor Corp.*, 380 F.3d 1107, 1112 (9th Cir. 2004). It is presumed that an

15   "otherwise valid exercise of specific jurisdiction is reasonable." *Ballard*, 65 F.3d at 1500;

16   *see also Sher v. Johnson*, 911 F.2d 1357, 1364 (9th Cir. 1990) (once the court has

17   found purposeful availment, it is presumed that personal jurisdiction would be

18   reasonable). The burden of convincing the court otherwise is on the defendant. *Id*. To

19   avoid jurisdiction, the defendant must "present a compelling case that the presence of

20   some other consideration would render jurisdiction unreasonable." *Burger King Corp.*,

21   471 U.S. at 477.

22           Despite having the burden to make a "compelling case" that exercise of

23   jurisdiction would be unreasonable, Full Sail only generally argues that "maintaining this

24   suit in California would offend traditional notions of fair play and substantial justice." Def.

25   Mot. at 16; *see also* Def. Reply at 11 (does not address the third prong). Accordingly,

26   Full Sail has failed to make a "compelling case" that exercising personal jurisdiction

27   would be unreasonable. Having already determined that Full Sail has made purposeful

28   contacts with California as indicated above, the Court finds that Full Sail has not carried

                                            12

1    its burden of rebutting the presumption in favor of personal jurisdiction and that it is fair

2    and just to exercise personal jurisdiction over Full Sail.

3        Accordingly, the Court DENIES Full Sail's motion to dismiss for lack of personal

4    jurisdiction.

5        **C.**    **Forum Non Conveniens**

6        Full Sail moves to dismiss this action on the ground that a valid forum-selection

7    clause requires that "all disputes" be decided in Ohio. *See* Def. Mot. at 13. "[T]he

8    appropriate way to enforce a forum-selection clause pointing to a state or foreign forum

9    is through the doctrine of forum non conveniens." *Atl. Marine Const. Co.*, 571 U.S. at 60.

10    Having concluded the Court has specific jurisdiction, the Court declines to exercise its

11    discretion to dismiss this action based on forum non conveniens, and concludes that this

12    exceptional tool is not warranted here. *See Gutierrez*, 640 F.3d at 1029; *Dole Food Co.*,

13    303 F.3d at 1118. Accordingly, the Court DENIES Full Sail's motion to dismiss pursuant

14    to forum non-conveniens.

15        **D.**    **Motion to Stay**

16        1.    <u>The Ohio State Action</u>

17        On December 10, 2024, Full Sail initiated the Ohio State Action by filing a

18    complaint in Montgomery County Common Pleas Court against Guidry Laison alleging

19    two causes of action for (1) breach of contract; and (2) declaratory action ("Ohio State

20    Complaint"). Def. RJN, Exh. A. The Ohio State Complaint alleges Full Sail and Guidry

21    Liason entered into an agreement for Full Sail's logistics services which was

22    memorialized by a May 4, 2022 Customer Application ("2022 Agreement"). *Id*. ¶¶ 1-3.

23    The Ohio State Complaint alleges Guidry Liason breached the 2022 Agreement by

24    failing to pay six outstanding invoices for delivered loads, totaling an amount owed of

25    $40,039.00. *Id*. ¶¶ 3-4, 13-18. The six outstanding invoices are dated for (1) July 18,

26    2024; (2) July 27, 2024; (3)-(4) August 5, 2024; (5) August 9, 2024; and (6) August 20,

27    2024. *Id*. ¶ 17. Full Sail further alleges Guidry Liason has refused to pay the six

28    outstanding invoices because of stolen loads that were scheduled to be delivered in July

2024 to Guidry Laison by Full Sail's Contract Carrier, Joshua Price, LLC. *Id*. ¶¶ 5, 19-26. The Ohio State Complaint alleges that Guidry Liason has written that it will "not release the money for the loads" until its claim for the stolen loads is paid and has also verbally admitted to "holding back" money owed to Full Sail because of the stolen loads. *Id*. ¶¶ 25-26. For relief, Full Sail seeks, in part, monetary damages and a declaratory judgment stating that "[Guidry Liason] breached the [2022] Agreement, that [Full Sail] did not breach the [2022] Agreement, that [Full Sail] (under the [2022] Agreement and any other related documents including any purchase orders or invoices) was not responsible for misdelivery or non-delivery of the stolen loads, and that [Guidry Liason] must pay [Full Sail] pursuant to the terms of the [2022] Agreement." Def. RJN, Exh. A. The Ohio State Court Action is currently active and is set for trial in March 2026. Def. RJN, Exh. C.

### 2.    First-to-File Rule

Full Sail argues the Court has discretion to dismiss, stay or transfer a later filed case covering the same claims and issues under the first-to-file rule. Def. Mot. at 16-17. Full Sail further argues application of the first-to-file rule may be applied to duplicative litigation pending in state court, even though district courts have often applied the first-to-file rule in duplicative litigation between two federal district courts. *Id*. at 16-17 (citing *Jiangmen Kinwai Furniture Decoration Co. Ltd v. Int'l Mkt. Centers, Inc*., 719 F. App'x 556, 558 (9th Cir. 2017)). The Court disagrees. First, Full Sail incorrectly states *Jiangmen* stands for the proposition that a district court may apply the first-to-file rule to a pending state court action. Def. Mot. at 17. On the contrary, the *Jiangmen* court affirmed the Nevada federal district court's grant to stay the action due to a pending North Carolina federal district court action. *See Jiangmen Kinwai Furniture Decoration Co. Ltd*, 719 F. App'x at 558. Second, California federal district courts have "overwhelmingly" "concluded that 'the federal first-to-file rule does not apply' where the first-filed case is pending in state court." *Tinnin v. Sutter Valley Med. Found*., 647 F. Supp. 3d 864, 871 (E.D. Cal. 2022) (quoting *Murphy v. Viad Corp*., 2022 WL 3137720, at *4 (C.D. Cal. May 13, 2022)). This is "in line with the Ninth Circuit's longstanding

description of the first-to-file rule as a doctrine of *federal comity* that extends to cases pending in other district courts." *Murphy,* 2022 WL 3137720, at *4 (citing *Pacesetter Sys., Inc.*, 678 F.2d at 94-95; *Kohn L. Grp.*, 787 F.3d at 1239). Accordingly, the Court DENIES Full Sail's alternative motion to stay or dismiss this action pursuant to the first-to-file rule.

### 3.    *Colorado River* Doctrine

Full Sail also argues a stay or dismissal of this action is warranted under the *Colorado River* doctrine because the Ohio State Action was filed two months earlier than this federal action and the parties and issues are substantially similar. Def. Mot. at 19-25. Guidry Liason argues the *Colorado River* factors weigh in favor of this Court retaining jurisdiction, and that this action should not be dismissed in favor of the Ohio State Action despite the state action being filed first. Pl. Oppn. at 12-14. Guidry Liason, however, does not address whether a stay (rather than dismissal) is appropriate pursuant to the *Colorado River* doctrine. *See generally* Pl. Oppn.

The Ninth Circuit has articulated eight factors to determine the appropriateness of a stay pursuant to the *Colorado River* doctrine:

> (1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court.

*R.R. St. & Co. v. Transp. Ins. Co.*, 656 F.3d 966, 978-79 (9th Cir. 2011). The factors do not operate as a mechanical checklist, and "[t]he weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case. Some factors may not apply in some cases, and, in some cases, a single factor may decide whether a stay is permissible." *State Water Res. Control Bd.*, 988 F.3d at 1203 (internal quotation and citations omitted). A district court "must stay, rather than dismiss, an action when they determine they should defer to the state court proceedings under

15

*Colorado River*." *Coopers & Lybrand v. Sun-Diamond Growers of CA*, 912 F.2d 1135, 1138 (9th Cir. 1990).

       a.  *First Factor: Jurisdiction Over Any Property at Stake*

    The first factor is irrelevant here because there is no property at issue. *See Nakash v. Marciano*, 882 F.2d 1411, 1415 n.6 (9th Cir. 1989). Accordingly, this factor is neutral and does not weigh in favor or against granting a stay in this action

       b.  *Second Factor: Inconvenience of the Federal Forum*

    Full Sail argues Ohio is a more convenient forum because Full Sail is an Ohio-based company with its principal place of business in Montgomery County, Ohio and most of Full Sail's evidence is in Ohio. Full Sail, however, acknowledges that this factor may be neutral given that Guidry Liason does business in California. Def. Mot. at 21-22. While Full Sail also argues the 2022 Agreement in the Ohio State Complaint calls for the "exclusive and irrevocable jurisdiction" of Ohio courts for claims arising in connection with any transactions, loads, or other business between the parties, the Court declines to interpret the 2022 Agreement challenged in the Ohio State Action to determine whether the relative convenience of the forums under this factor is met. *See* Def. Mot. at 21. Guidry Liason argues both forums would be convenient for each party because the parties have transportation operations in California, but witnesses are likely located in California and not subject to jurisdiction in Ohio. Pl. Oppn. at 13. Based on the parties' concessions and the Court's own review, the Court finds the convenience of the forums is somewhat equivalent based on citizenship of the parties and where evidence and witnesses may be located. Accordingly, this factor is neutral and does not weigh in favor of or against granting a stay in this action. *See Nakash*, 882 F.2d at 1415 n.6.

       c.  *Third Factor: Desire to Avoid Piecemeal Litigation*

    "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1369 (9th Cir. 1990) (internal quotation marks and citation omitted). "The mere possibility of piecemeal litigation does not constitute an exceptional

circumstance." *R.R. St. & Co. Inc*, 656 F.3d at 979. "Instead, the case must raise a special concern about piecemeal litigation, which can be remedied by staying or dismissing the federal proceeding." *Id*. (internal quotation marks and citations omitted).

Both actions involve the same parties and the same underlying business relationship, but there are different legal claims and issues. In the Ohio State Action, Full Sail seeks damages and declaratory relief for breach of contract arising from Guidry's refusal to pay six outstanding invoices for loads that were delivered. In this federal action, Guidry alleges Full Sail breached the parties' express and implied contract when it failed to deliver two loads—loads that are different and unrelated to the six invoices in the Ohio State Action— that Full Sail agreed to pick-up and have delivered, and failed to take responsibility for the lost or stolen loads, resulting in Guidry having to pay for the lost or stolen loads. The connection between the two cases is that Guidry allegedly refused to pay Full Sail for the six outstanding invoices due to Full Sail's refusal to take responsibility for the two lost or stolen loads.

There is some risk of duplication of judicial resources and inconsistent rulings because in the Ohio State Action, Full Sail also seeks a declaratory judgment that Full Sail is not responsible for "misdelivery or non-delivery" of stolen loads on other related documents, including any purchase orders or invoices, which is in dispute in this federal action. *See* Def. RJN, Exh. C. In addition, Guidry Liason has asserted an affirmative defense in its Answer in the Ohio State Complaint relating to Full Sail's own breach of contract relieving it of its obligations under the Agreement. Def. RJN, Exh. B. Guidry Liaison has not, however and somewhat inexplicably, raised counterclaims in the Ohio State Action. The Court finds this factor weighs slightly in favor of staying this action, but concludes the risk of piecemeal litigation can be reduced through case management and the risk is somewhat reduced given that the Ohio State Action is much further along than this federal action.

d.    *Fourth Factor: Order in Which Forums Obtained Jurisdiction*

Under the fourth factor, "priority should not be measured exclusively by which

17

1   complaint was filed first, but rather in terms of how much progress has been made in the

2   two actions. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 3 (1983).

3   Here, it is undisputed that the Ohio State Action was filed first on December 10, 2024.

4   Def. RJN, Exh. A. This pending action was not filed until February 21, 2025 in Stanislaus

5   County Superior Court, and was later removed to this federal court on April 25, 2025.

6   *See* Removal. In the Ohio State Action, a final pretrial order was issued on March 14,

7   2025 outlining discovery deadlines, motion deadlines, and trial deadlines. Def. RJN, Exh.

8   C. The final pretrial conference in the Ohio State Action is set for February 17, 2026, and

9   the trial is scheduled to begin on March 2, 2026. *Id.* In this federal action, no scheduling

10  order has been issued, and aside from the pending motion before the Court, no

11  substantive progress has been made in this action. *See* Docket. Upon removal of this

12  action, Full Sail filed the pending motion. *Id.* Therefore, the Ohio State Action has

13  progressed much further than this federal action and the Court finds this factor weighs in

14  favor of staying this action.

15                    e.    *Fifth Factor: Whether Federal Law or State Law Provides the*

16                          *Rule of Decision on the Merits*

17         The fifth factor examines "whether federal law or state law provides the rule of

18  decision on the merits." *R.R. St. & Co. Inc*, 656 F.3d at 980. "[T]he presence of federal-

19  law issues must always be a major consideration weighing against surrender of

20  jurisdiction" but "[i]f the state and federal courts have concurrent jurisdiction over a claim,

21  this factor becomes less significant." *Nakash*, 882 F.2d at 1416 (internal quotation marks

22  and citations omitted). Here, the parties agree that only state law governs the claims.

23  Def. Mot. at 23; Pl. Oppn. at 13. "[T]he presence of state-law issues may weigh in favor

24  of [surrender of jurisdiction] only in some rare circumstances." *R.R. St. & Co. Inc.*, 656

25  F.3d at 980 (internal quotation marks and citations omitted). In cases such as this one

26  that involve "routine issues of state law, such as breach of contract," this factor is neutral.

27  *Id.* Accordingly, this factor is neutral and does not weigh in favor of or against granting a

28  stay in this action.

1

        f.    *Sixth Factor: Whether the State Court Proceedings Can*

2

          *Adequately Protect Federal Rights*

3       For the sixth factor, the Court examines "whether the state court might be unable

4  to enforce federal rights." *Seneca Ins. Co., Inc. v. Strange Land, Inc.*, 862 F.3d 835, 845

5  (9th Cir. 2017). This factor favors federal jurisdiction when the state court is unable to

6  protect the litigant's *federal rights*. *See Travelers Indem. Co.*, 914 F.2d at 1370 ("This

7  factor involves the state court's adequacy to protect federal rights, not the federal court's

8  adequacy to protect state rights."). Guidry Liason's argument that the Ohio state court

9  may not have jurisdiction over third parties and certain witnesses, while a valid concern,

10  goes to the eighth factor and does not address *federal* rights. *See* Pl. Oppn. at 13-14.

11  Guidry Liason has not identified any federal rights that the state court cannot adequately

12  address. Accordingly, the Court finds this factor weighs in favor of granting a stay.

13              g.    *Seventh Factor: Desire to Avoid Forum Shopping*

14       Under the seventh factor, the Court considers "whether either party improperly

15  sought more favorable rules in its choice of forum or pursued suit in a new forum after

16  facing setbacks in the original proceeding." *Seneca Ins. Co., Inc.*, 862 F.3d at 846. "In

17  the *Colorado River* context, this Circuit has held that forum shopping weighs in favor of a

18  stay when the party opposing the stay seeks to avoid adverse rulings made by the state

19  court or to gain a tactical advantage from the application of federal court rules." *Travelers*

20  *Indem. Co.*, 914 F.2d at 1371. "To avoid forum shopping, courts may consider 'the

21  vexatious or reactive nature of either the federal or the state litigation.'" *R.R. St. & Co.*,

22  656 F.3d at 981 (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 17). Here, Full Sail

23  argues instead of filing a compulsory counterclaim in the Ohio State Action, Guidry

24  Liason initiated this federal action to increase unnecessary litigation and attorney fees.

25  Def. Mot. at 24-25. Full Sail bases its argument on an email from Guidry Liason's

26  President, *see id.*, which Guidry Liason does not contest or oppose, conceding this

27  argument. *See generally* Pl. Oppn. Accordingly, the Court finds this factor weighs in

28  favor of granting a stay in this action.

1           h.     *Eighth Factor: Whether the State Court Proceedings Will*

2                  *Resolve all Issues Before the Federal Court*

3       The eighth factor, referred to as the "parallelism" factor, "considers whether the

4 parallel proceedings address 'substantially similar' claims." *Seneca Ins. Co., Inc.*, 862

5 F.3d at 845. "Though 'exact parallelism ... is not required,' substantial similarity of claims

6 is necessary before abstention is available." *Id.* (quoting *Nakash*, 882 F.2d at 1416). As

7 a result, the parallelism factor is sometimes referred to as a "necessary precondition" to

8 *Colorado River* abstention. Therefore, "the existence of a substantial doubt as to

9 whether the state proceedings will resolve the federal action precludes a *Colorado River*

10 stay or dismissal." *R.R. St. & Co. Inc.*, 656 F.3d at 982 (internal quotation marks and

11 citations omitted).

12       Here, as discussed above, though the Ohio State Action and this federal action

13 have some overlap between the factual and legal issues, there is a substantial doubt

14 that the Ohio State Action will resolve all the claims raised in this federal action. The

15 main issue in this case—whether Full Sail is responsible for the two lost or stolen

16 loads—could remain unresolved even if the Ohio State Action is completed. For

17 example, though Full Sail seeks a declaration of certain rights in the Ohio State Action,

18 the Ohio state court could deny Full Sail's request for declaratory relief without making

19 affirmative findings that resolve all or some of the legal issues raised in this case. In

20 addition, whether Full Sail wins or loses its Ohio state claim on the six unpaid invoices

21 does not impact whether Full Sail is responsible for the two lost or stolen loads in this

22 action as those two loads are not related to the six delivered loads in the Ohio State

23 Action. This Court does not have the required "full confidence" that the Ohio State Action

24 will end the federal litigation. *See Intel Corp.*, 12 F.3d at 913 (quoting *Gulfstream*

25 *Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 277 (1988)). Because this Court

26 has substantial doubt that the Ohio state proceedings will resolve all the claims raised in

27 this federal action and the parallelism factor is a necessary precondition to granting a

28 *Colorado River* stay or dismissal, the Court denies Full Sail's alternative motion to stay.

1 | *See R.R. St. & Co.*, 656 F.3d at 982.

2 |       The Court does acknowledge, however, the risk for potential duplication of judicial

3 | resources and inconsistent rulings. This can be minimized through effective case

4 | management, which will be addressed in the parties' initial scheduling conference and a

5 | separate order will issue.

6 |       Accordingly, the Court DENIES Full Sail's alternative motion to stay or dismiss

7 | this action pursuant to the *Colorado River* Doctrine.

8 | **IV.    CONCLUSION**

9 |       In conclusion, IT IS HEREBY ORDERED that:

10 | 1.    Defendant Full Sail's request for judicial notice (ECF No. 8) is GRANTED;

11 | 2.    Defendant Full Sail's motion to dismiss (ECF No. 7) is DENIED; and

12 | 3.    Defendant Full Sail's alternative motion to stay or dismiss (ECF No. 7) is

13 |       DENIED.

15 | Dated:  December 15, 2025

16 | _____
CHI SOO KIM
17 | UNITED STATES MAGISTRATE JUDGE

18 | 4, guid1199.25

21